# The Huntingdon and Broad Top Railroad, &c., Company *versus* Decker.

1. Where a conductor employed on a railroad is habitually intemperate and unfit for such service, and his habits and unfitness are known to the superintendent of the railroad, intrusted with power to employ and discharge, and who employed and retained him in its service, the company is liable in damages for the death of a fellow employee resulting from the carelessness and incompetency of such conductor.

2. The measure of damages under the Act of 26th of April 1855, where death results through negligence, is such compensation only as the evidence shall clearly prove to have been pecuniarily suffered by the surviving relatives, in this case, by the widow and children of the deceased.

3. Under the 1st sect. of the Act of 1855 the widow in this case had the right of action. The 2d sect. of said act requires that the declaration shall state who are the parties entitled in such action, and that it shall be brought within one year after the death. The widow brought the action within the time limited, and before trial, but not within the year, the declaration was amended by naming the children as jointly entitled to damages with her. *Held*, that the suit was properly brought and in due time, and that the limitation had no application to the subsequent amendment of the declaration.

84 419
165 346
84 419
169 98
84 419
179 539
84 419
193 345
84 419
203 ²514
84 41C
204 ³230
84 419
31 SC 292
84 419
f216 ³169
84 419
f218 ¹326
84 419
f220 ³193
84 419
41SC ³165
41SC ³166
41SC ³623

[Huntingdon and Broad Top Railroad Co. *v.* Decker.]

May 30th 1877.  Before AGNEW, C. J., SHARSWOOD, GORDON, PAXSON, WOODWARD and STERRETT, JJ.  MERCUR, J., absent.

Error to the Court of Common Pleas of *Huntingdon county:* Of May Term 1877, No. 168.

Case by Mary Decker against the Huntingdon and Broad Top Railroad and Coal Company, to recover damages for herself and children for the death of her husband, Adolphus Decker, who was killed in a collision on defendants' railroad and whose death she alleged was occasioned by the negligence of defendant.

Decker was in the employ of the railroad as a locomotive engineer.  His usual "run" was from Huntingdon south to Saxton. On the day of the collision, owing to an accident on the southern end of the road, Decker was ordered to draw "No 2 coal train" to Mount Dallas, twenty-five miles beyond Saxton.  Decker left Huntingdon and was on schedule time at the various points he passed on the road.  On the same day an irregular train was run north from Mount Dallas by a conductor named Jacob Bowser.  It was not run on schedule time, but by means of telegraph orders transmitted to the different stations along the road.  Its standing orders, however, which were known to Bowser, were to keep out of the way of the regular trains.  Before Bowser left Mount Dallas, McKillips, the superintendent of the railroad, sent a telegraphic order to the operator at Mount Dallas to call Bowser in for orders, and the following order was read and handed to him by the operator :—

"Telegraph Train Order.
'No. 2 coal train will be represented.  Run accordingly.'
Correct.  J. McK.                              J. McK."

It appeared that if Bowser had drawn his train on the siding at Piper's Run and there awaited until Decker's train passed he would have been "running accordingly," but continuing to run after he left Piper's Run, at a sharp curve, where neither train was visible to each other until a few seconds before the collision, the two trains collided, resulting in the death of Decker, Bowser and three others.  The order of McKillips was found on the body of Bowser.  It appeared from a remark made by Bowser that he had misread the order as if it had been " coal train No. 2 will *not* be represented," and that in consequence of this mistake he had pushed on and thus brought about the collision.

The defence was that the railroad was not liable for an injury occasioned by the mistake or negligence of Bowser, who was the fellow servant of Decker.

At the trial the plaintiff offered to prove, (1) by certain witnesses that they were employed by John McKillips as employees or servants of the defendant prior to the accident, and that they were then in the employ of the company ; that all the schedules and

[Huntingdon and Broad Top Railroad Co. v. Decker.]

time tables furnished to the employees were printed with McKillips's name as superintendent at the bottom ; that all conductors and employees obeyed his orders in running trains and conducting the business of the road, and that he employed and discharged men at his pleasure ; (2) to prove by a witness that he was well acquainted with Bowser at the time of the accident ; that two hours before it happened witness met and conversed with Bowser, only ten miles from the place of collision, and that Bowser was so drunk that he staggered ; that Decker was killed by the negligence of Bowser, the result of his habitual negligence and intemperance, to be followed with evidence that the superintendent, McKillips, knew of the habits and character of Bowser ; (3) to prove by the witness on the stand, and other witnesses who ran on the train with Bowser, that for more than two years prior to the accident, Bowser was in the habit of getting drunk while on duty; of sending the hands employed on his train for whiskey, and holding his train until they would return ; of tapping barrels of whiskey carried on his train as freight, and drinking therefrom, and for this purpose for nine months immediately preceding the accident, carried a gimlet with him on the train ; and that during this time he was frequently seen by McKillips, the general superintendent, in a state of intoxication ; that Bowser was drunk on the day of and at the time of the accident ; and that two bottles, one of them half full of whiskey, were found near his dead body on the day of the accident, and by the first persons who reached the wreck within an hour after the plaintiff's husband was killed ; that whiskey in bottles, such as were found at the wreck, was furnished to Bowser on the day of the accident, a few hours prior to it; that his habits of intemperance and recklessness were so long continued as to have resulted in forming for him a general reputation for recklessness and intemperance, which reputation was known to the superintendent, McKillips, previous to November 1st 1872 ; that prior to the accident, complaint was made by employees to the superintendent of the recklessness and intemperance of Bowser, and that he promised to see what he could do, and said "Wait a little ;" that Bowser was repeatedly discharged from the service of the company by McKillips for recklessness, drunkenness and disobedience of orders, and was after such discharge re-employed by him.

Defendant objected to all that part of the offer which proposed to prove acts of Bowser, not at the time and place of the accident, including all the offer relating to tapping barrels, and the finding of whiskey bottles at the place of the accident, the offer not proposing to show that the bottles were in the possession of Bowser.

The court said : " In so far as the offer proposes to show that Bowser was an intemperate, reckless man, and that this was known to McKillips, the superintendent, and that whiskey bottles were found near his body, such as were in his possession or had been given him

[Huntingdon and Broad Top Railroad Co. *v.* Decker.]

before the accident, the evidence is admitted. But any particular instance of intoxication, except on the day of the accident, is not evidence and is therefore excluded."

4. To prove by witness that he is the person mentioned by other witnesses as having been on Bowser's train on 1st November 1872, with the satchel and the liquor; that on that day, immediately prior to the accident, he gave Bowser at least two drinks of whiskey, and that before leaving Saxton that day, he saw a person whom he believed to have been Bowser, take a bottle out of his pocket and take a drink from it and put the bottle back again into his pocket.

The evidence under these four offers was admitted by the court under objection, and constituted the first four assignments of error.

The sixth assignment was the affirmance by the court of the following point of plaintiff :—

"If under all the evidence, the jury find for the plaintiff, the proper measure of damages is the pecuniary loss suffered by her and her two children; and that loss is what her husband would have probably earned by his labor in his business during his lifetime, and which would have gone for the benefit of the plaintiff and her two children, taking into consideration his age, ability and disposition to labor, and his habits of living and expenditure."

Decker was killed on the 1st of November 1872. He left a widow and two children. On the 23d of September 1873 the widow brought this suit. The children were not therein named nor were they in the *narr.* filed on the 7th of October 1874. After the cause was at issue, however, on the 2d of April 1875, plaintiff filed an amended *narr.*, claiming for herself and children.

Defendants' third point was as follows :—

"That the action having been commenced by Mary Decker alone and for her own use, there can be no recovery for the use of the children, and the verdict in no case can exceed $1666.66⅔." The refusal of this point by the court was the seventh assignment.

The verdict was for the plaintiff for $6000, which was afterwards reduced by the court to $5000, under the second section of the Act of April 4th 1868, Pamph. L. 58, Purd. Dig. 1094, limiting the recovery in cases of death to the latter sum. Defendant took this writ and the assignments of error, *inter alia*, were those noted above.

*John Cessna* and *S. T. Brown*, for plaintiff in error.—The evidence admitted under the first offer was not the best evidence of the fact sought to be proved, when the printed copies of the regulations of the company were available and would have shown the extent of McKillips's authority. The conversation had with Bowser was too remote from the place of accident to constitute part of the *res gestæ* and there was no evidence to show knowledge thereof by the company. Neither had it the means of knowing of the specific acts contained in the fourth offer.

[Huntingdon and Broad Top Railroad Co. *v.* Decker.]

If the children were entitled to a portion of the damages they should have been joined with the mother in the action, and not having been joined her recovery should have been restricted to one-third of the maximum allowed by law.

*R. M. Speer* and *E. S. McMurtrie*, for defendant in error.— The plaintiff alleged that McKillips was the superintendent of the road, with power to employ and discharge all the hands. How was this to be proved ?    Clearly by showing that, with the knowledge and consent of the company, he *in fact*, exercised these powers, and was held forth to the world as the general superintendent.

The question being whether Bowser was in an unfit condition to run his train, his acts and declarations at the time were clearly evidence.   It was undoubtedly competent also to show his habits of drunkenness, and that they were known to the superintendent, who had the control and management of the road.   Such habits, in case of accident, raise a presumption of negligence : Huntingdon and Broad Top Railroad Co. *v.* Decker, 1 Norris 119 ; Pennsylvania Railroad Co. *v.* Books, 7 P. F. Smith 343 ; Gilman *v.* Railroad Corporation, 10 Allen 238.

The instruction in regard to the measure of damages was correct : Pennsylvania Railroad Co. *v.* Butler, 7 P. F. Smith 338. The limitation in the Act of 1855 is to the time within which the action shall be brought, and not as to when the declaration is to be filed.

Mr. Justice STERRETT delivered the opinion of the court, October 1st 1877.

The husband of the plaintiff, while engaged as engineer in running one of the company's trains, was killed in a collision with another train, of which Jacob Bowser was conductor.   It was claimed, and evidence was offered to show, that Bowser was habitually intemperate, and unfit for the service in which he was engaged; that the collision was wholly the result of his general carelessness and incompetency, and that his bad habits and unfitness for the position were known to the superintendent by whom he was employed and retained in the service of the company.

The general principles of law, applicable to such a state of facts as was disclosed by the testimony, were very fully and clearly presented to the jury by the learned judge below.   It cannot be doubted that one who engages in a general service in which others are employed, assumes the risks of such service, including those which arise from the negligence of his fellow-employees ; but, while this is true, a duty devolves on the employer.   He is bound to use ordinary care in the selection of his employees, and if he neglects to do so, or if he retains them after he becomes aware of their

[Huntingdon and Broad Top Railroad Co. *v.* Decker.]

unfitness or incompetency, he is answerable to the fellow-servant for his negligence in this respect. Applying the principle to this case when it was here on a former writ of error, it was said that when a railroad company employs a conductor who is unfit for the business, and knows his unfitness, it is chargeable with the consequences of his negligence, even to one employed in the same general service, and that the knowledge of the superintendent, intrusted with the management of the road and the power of employing and discharging hands, is notice to the company : 1 Norris 119.

The testimony covered by the first four assignments of error was properly admitted. It tended to prove the incompetency of Bowser; that the collision was the result of his carelessness or reckless conduct, and that he was employed and retained in the service of the company by its superintendent with a knowledge of his character and unfitness for the position of conductor. The purpose of the first offer was to prove that McKillips was held out by the company, to the employees and the public, as the person in charge of its business. If his name appeared on the schedules and time-tables of the road as its superintendent, and he acted as such in the management of its business, giving orders to conductors and other employees, hiring and discharging hands, &c., it was certainly competent as well as strong evidence of agency in these particulars. It is difficult to see how such agency could be more satisfactorily established than by showing that these acts were performed in a manner and under circumstances that clearly justified the inference that they were done with the full knowledge and by authority of the company. It was not necessary to show that he acted under or by virtue of any special form of authority. If, in point of fact, he transacted the business with the knowledge and consent of the directors or officers of the board, and was thus held out to the public, the company was answerable for his acts done within the general scope of the business with which he was intrusted. The second offer was to prove that Bowser was a man of known reckless and intemperate habits ; that about two hours before the collision occurred he was so much intoxicated that he staggered ; that Decker's death was occasioned by the recklessness and intemperance of Bowser, whose character and habits were known to the superintendent. All this testimony, as well as that introduced under the third and fourth offers, was both competent and relevant. That portion of the testimony which tended to prove the intemperate habits and character of Bowser, and that he was intoxicated shortly before and probably at the very time of the collision, was most pertinent and material. "It is certainly incumbent on railroad companies to employ none but sober men on their roads. When a habit of intoxication in a conductor is shown, it raises, in case of

an accident, a presumption of negligence, which stands until it is rebutted:" Railroad Company *v.* Books, 7 P. F. Smith 343.

The fifth assignment was not presented in accordance with the rules of court and was not pressed on the argument. The sixth assignment, relating to the measure of damages, is not sustained. The instructions given on this subject are in harmony with the act which restricts the recovery in cases like the present, to such compensation only as the evidence shall clearly prove to have been pecuniarily suffered or sustained. The jury were instructed that " the proper measure of damages is the pecuniary loss suffered by the plaintiff and her two children." If the children are entitled to participate in the damages recovered, it follows that the instruction was correct.

The subject of complaint in the seventh assignment is the refusal of the court to charge that " the action having been commenced by Mary Decker alone and for her own use, there can be no recovery in this action for the use of the children, and the verdict in no case can exceed the sum of $1666.66⅔." This assignment is based on the state of the record and what is claimed to be the proper construction of the Acts of Assembly, regulating actions in cases where death has been occasioned by unlawful violence or negligence. Suit was brought by the widow within a year after her husband's death, and a *narr.* was filed in which the children were not named. In 1875, after the cause was at issue, the declaration was amended by inserting the averment, " that the parties entitled to the damages in this action, are the said Mary Decker, widow, and John R. Decker and Minnie Maud Decker, the only children of the said Adolphus Decker, deceased." Under the Act of 1851, the right of action was given to the widow, and if the deceased left no widow, then to the personal representatives. This was followed by the Act of 1855, which provides that " the persons entitled to recover damages for an injury causing death, shall be the *husband, widow, children* or *parents* of the deceased and no other relative; and the sum recovered shall go to them in the proportion they would take his or her personal estate in case of intestacy, and that without liability to creditors." The next section requires that "the declaration shall state who are the parties entitled in such action;" and that it shall be brought within one year after the death and not thereafter. Instead of confining the right of action to the widow and personal representatives, it designates four separate parties, to one of whom, according to the circumstances of each case, the right of action is given. If the deceased leaves a husband, he alone is clothed with the right of action; if the wife is the survivor, she is entitled to bring suit; if there be neither surviving husband nor widow, the right of action is given to the children, and if there be neither husband, nor widow, nor children surviving, it is given to the parents of the deceased. But while the right of action is given,

[Huntingdon and Broad Top Railroad Co. *v.* Decker.]

according to the circumstances of each case, to one of the four desig-
nated parties, it is clear from the wording of the act, that the entire
sum recovered is not always to be retained by the plaintiff in his or
her own right.   It is to be distributed among the relatives named in
the proportion they would be entitled to take the personal property
of the deceased in case of intestacy ; and, to the end that it may
appear who are entitled to participate in the damages recovered, it is
required that the declaration shall state who they are.   In the pres-
ent case the widow had the right of action, not exclusively for her
own use, but for the joint use and benefit of herself and children.
She accordingly brought suit, in her own name, within the time lim-
ited by the act.   Before trial the declaration was amended by nam-
ing the parties entitled to the damages claimed.   It appears to us
that this is the correct interpretation of the act, and that the pro-
ceedings were regular.   The suit was properly brought, in due time,
by the widow, and the limitation had no application to the filing or
subsequent amendment of the declaration.   If it had been the inten-
tion of the legislature, that the children should be joined with the
widow, as plaintiffs in bringing suit, their names would of course
appear as such, and there could be no object in requiring " that the
declaration shall state who are the parties entitled in such action."
The object of the Act of 1855 was not to take away the right of
action given to the widow by the Act of 1851 ; on the contrary it
recognises her right and provides how the damages shall be dis-
tributed.

The subjects of complaint in the remaining assignments are the
answers of the court to the defendant's fourth, fifth, tenth, eleventh
and twelfth points.   There is nothing in either of them that calls
for special notice.   They are all substantially correct.

Judgment affirmed.