## Waltz *v.* Pennsylvania Railroad Company, Appellant.

*Negligence—Railroads—Infant—Parent and child—Parties—Amendment.*

Where a suit is brought in the name of a father to recover damages for the death of an infant son, and the jury returned a verdict in a lump sum for the parents as "total damages for the death of their son," the record may subsequently be amended by adding the name of the mother of the deceased.

*Negligence—Railroads—Newsboy—Station—Defective locomotive.*

Where a boy employed by a news company is properly and lawfully engaged in taking newspapers from a train standing at a station, and while doing so is killed by a locomotive passing on the track between the train and the station, the company will be liable for his death where it appears that the locomotive was in a defective condition, that by reason of the defect it could not be stopped by its engineer after he had ascertained that a train was standing at the station, and that the locomotive was being operated by direct order of the superintendent of the division after he had been advised of its defective condition.

Argued May 7, 1906. Appeal, No. 4, April T., 1906, by defendant, from judgment of C. P. Cambria Co., Dec. T., 1903, No. 336, on verdict for plaintiff in case M. C. Waltz v. The Pennsylvania Railroad Company. Before RICE, P. J., PORTER, HENDERSON, MORRISON, ORLADY, HEAD and BEAVER, JJ. Affirmed.

Trespass to recover damages for the death of the plaintiff's son. Before O'CONNOR, P. J.

The facts relating to the accident are stated in the opinion of the Superior Court.

Defendant presented the following points:

1. Inasmuch as Mary Waltz, the mother of the decedent, is living and not a party to this action, the plaintiff cannot recover. *Answer:* We decline to so instruct you. We believe still that the father is entitled to the services of his minor children until they become twenty-one years of age, and we do not construe the act of 1855 to mean anything more than either father or mother may recover, and the father while living being entitled to the services, we refuse the point. It is at most a matter that may be amended and it cannot seriously affect your finding in this case. [1]

2. There being no duty owing to the decedent by the defendant company, the plaintiff cannot recover.  *Answer:* If it were admitted that the young man was not upon defendant's premises in the line of his duty or in pursuance of some legal right, we would affirm the point; but we are not certain that he has not been in pursuance of a legal duty.  We have left that question to you and decline the point for that reason. [2]

3. The decedent was a trespasser on the platform of defendant company: therefore, the plaintiff, who is the father of the decedent, cannot recover.  *Answer:* We have instructed you in our general charge that if he was a trespasser the plaintiff cannot recover.  We cannot affirm the point as drawn for the reason that it assumes a fact which is not admitted. [3]

4. That the decedent was unnecessarily standing in a dangerous place, and not having any business to transact, nor having any business relations with the defendant company, he was negligent; therefore the plaintiff cannot recover, and the verdict should be for the defendant.  *Answer:* We have fully instructed you upon that point in our general charge; if he was careless, standing by the track or in a place where he must have known that he would be injured, and took the risk, that would be contributory negligence and he could not recover; but we are not saying that he was unnecessarily standing in a dangerous place; we leave that question to you and refuse to affirm the point as drawn. [4]

5. The defendant requests the court to instruct the jury that, if they find for the plaintiff, to state in their written verdict whether the damages so found are for the full compensation for both parents of the deceased.  *Answer:* We instruct you, if you find for the plaintiff, to find full compensation and damages so far as it affects both parents, and you must say in your verdict that you so find; that is, you will find full compensation in damages, whether due the father or due the mother, or due both the father and the mother. [5]

6. Inasmuch as engineman of 1758 violated an established rule of defendant company in running by a passenger train while it was standing at the station, the defendant company was not negligent, and the plaintiff cannot recover under the facts of this case and the verdict should be for the defendant

company.  *Answer :* We decline to so instruct you.  It is an evidence of carelessness, and was recognized by the company as a dangerous practice to run an engine and train of cars between a passenger train and the station at a time when a passenger train is receiving or discharging passengers ; as we view it, instead of lessening its liability, it only increases it, the company being liable for the acts of its agents.  This point is refused.  [6]

7. Even if the court should be of the opinion that decedent was an employee of the Union News Company, the plaintiff could not recover by reason of the provisions of the act of April 4, 1868, and the verdict should be for the defendant company.  *Answer :* The facts in the case showing that decedent was employed by the Cresson News Company, this point would not apply, because there is no evidence that he was in the employ of the Union News Company.  The only evidence is that the person in charge of the Union News Company sent for him that evening to come to that place, and in that view of the case we say he was lawfully there, although there is no evidence that he was employed there.  The point is refused as having no application to the facts in the case.  [7]

8. Even if the court should be of the opinion that decedent was an employee of the Cresson News Company, the plaintiff could not recover, and the verdict should be for the defendant company.  *Answer :* We cannot affirm this point under the evidence for the reason that the person employed by the agent of the Union News Company has testified that he sent for the boy to come there, and he came up to the front of the station, where sales were being made ; that was about the last time he was seen before he was injured.  [8]

Verdict and judgment for plaintiff for $1,446.56.  Defendant appealed.

*Errors assigned* among others were (1–8) above instructions, quoting them ; and (12) allowing amendment so as to add the name of the mother to the record.

*H. W. Storey,* for appellant.—It must be admitted that the decedent was at the Cresson station on November 20, 1902, either as an employee of the Union News Company or out of

idle curiosity. Assuming the second proposition to be true, then the only duty the railroad owed him was to abstain from wantonly and willfully injuring him, and no liability arises to such person from the want of ordinary care : Philadelphia, etc., R. Co. v. Hummell, 44 Pa. 375 ; Gillis v. Penna. R. R., 59 Pa. 129 ; Baltimore & Ohio R. R. v. Schwindling, 101 Pa. 258 ; also see Moore v. Penna. R. R. Co., 99 Pa. 301 ; McMullen v. Penna. R. R. Co., 132 Pa. 107 ; Cauley v. Railroad Co., 95 Pa. 398 ; Enright v. R. R., 198 Pa. 166.

The testimony shows that young Waltz was there for the purpose of going to the train and receiving therefrom certain papers. The fact brings him directly within the intent of the act of 1868, supra. It is the duty of the employees to receive articles from the trains. If young Waltz assumed this duty, he took upon himself the responsibility of an employee : Ricard v. R. R., 89 Pa. 193 ; Gerard v. Penna. R. R., 12 Phila. 394 ; Mulherrin v. R. R., 81 Pa. 366.

An amendment which would deprive the other party of the benefit of the statute of limitations, or any other valuable right, should not be allowed : Wright v. E. T. C. Co., 11 Pa. Dist. Rep. 452 ; 26 Pa. C. C. 497 ; Wright v. E. T. Cooper Co., 206 Pa. 274.

*Robert E. Creswell*, with him *Thomas J. Itell*, for appellee.— The amendment was proper : Booth v. Dorsey, 202 Pa. 381 ; Hughes v. Williams, 17 Pa. Superior Ct. 229 ; Herbstritt v. Lackawanna Lumber Co., 212 Pa. 495 ; Booth v. Dorsey, 202 Pa. 385 ; Wright v. Eureka Copper Co., 206 Pa. 274.

The case was for the jury : Howard Express Co. v. Wile, 64 Pa. 201 ; First Nat. Bank v. Wireback, 106 Pa. 37 ; Rummell v. Dilworth, 111 Pa. 343 ; Vannatta v. Cent. R. of N. J., 154 Pa. 273.

It was only by the mere circumstance of locality that the decedent came to be upon the railroad company's premises, and therefore the act of April 4, 1868, relied upon by the defendant, has no application whatever : Spisak v. B. & O. R. R., 152 Pa. 281 ; Vannatta v. Cent. R. R. of N. J., 154 Pa. 262 ; Noll v. R. R., 163 Pa. 504 ; Johnson v. Bruner, 61 Pa. 58 ; Bier v. Standard Manufacturing Co., 130 Pa. 446 ; Ross v. Walker, 139 Pa. 42 ; McGuigan v. Beatty, 186 Pa. 329.

OPINION BY ORLADY, J., June 30, 1906:

The plaintiff's son, aged about fifteen years, was killed at Cresson station on the defendant's railroad on November 20, 1902, about five o'clock in the evening.

It is undisputed that the Union News Company, under an arrangement with the defendant, had a booth or stand, for the sale of papers, periodicals, etc., on the platform of Cresson station, and received its supplies at that point by baggage car service, the goods being delivered at the car door to the employees of the Union News Company, and by them taken to the booth. John F. Parrish was the local agent of the Union News Company, and, as a personal enterprise, operated a small business in the name of the Cresson News Company, by delivering papers, magazines, etc., in Cresson, at points away from the station.

Henry Waltz was employed by Parrish for $2.50 a week to deliver papers received at the booth around the town, and to perform such other work as he was directed.

On November 20, Parrish was obliged to go away from Cresson for the night, and requested his father to take care of the evening business at the booth, lock it up, and open it for business the next morning.

The morning daily papers arrived at six and eight thirty o'clock by east and west trains. The news stand was generally kept open until about eight o'clock P. M. On this evening, Parrish, the father, who was there representing his son, testified as follows: " Q. Did you see Henry Waltz, around there? A. Yes, sir. Q. Where was he? A. Standing at the outside window; I was inside. Q. What was Henry Waltz doing there? A. He was there for the purpose of helping that evening. Q. What were you doing there? A. I was tending to the news stand for the evening. Q. What was Henry doing? A. Well, he intended—his idea was to bring the papers from the train, as the train pulled in there, he was to bring the papers to the stand to me. That is what he was there for, to bring the papers up to the stand. Q. You were in charge of the news stand that evening? A. Yes, sir. Q. Did you invite Henry Waltz down there that evening? A. Yes, sir; I asked him to help me out that evening. Q. You asked him to come down? A. Yes, sir. Q. What were John Parrish and Mr. Waltz talking

about?   A. About newspapers.   Q. What was the conversation?   A. Mr. Parrish told him to go and get the newspapers when the train would come in from the west.   He was to get them and distribute them among the customers.   To get them ready.   Q. What train did he look for the papers on?   A. It was No. 34 (a passenger train)."

The boy was standing on the station platform near to the news booth, with baggage trucks in his immediate vicinity when, as the appellant in his history of the case states, " The accident occurred by an engine running east on Track No. 1, while the passenger train was standing on Track No. 2, going in the same direction, striking a baggage truck, which was thrown against the deceased."

This engine had become disabled while hauling a train of cars from South Fork eastward and was obliged to leave the train at Portage, and from there the engineer reported its defective condition to the superintendent of the division.   Orders were issued to the engineer to proceed to Altoona with the engine and tender alone, and while he was approaching Cresson station, owing to the escaping steam which filled the cab, he was unable to see along the line of the track and distinguish the passenger train standing at Cresson station.   When quite near to the station he endeavored to bring his engine to a standstill, but found that the throttle would not work, and before he could apply the brakes successfully, the engine had passed through the station on the track between the one on which the passenger train was then standing and the station platform, striking the truck, and causing the death of the boy.   This occupancy of the track by the engine was in direct violation of Rule No. 114, as follows: —" Trains approaching stations where a passenger train is receiving or discharging passengers must be stopped before reaching the passenger train."

The only explanation of the violation of this rule was, that by reason of the defective freight engine, it could not be controlled.   On the trial a prominent contention was that the boy was a trespasser on the track of the company, and unnecessarily exposed himself to a manifest danger by being there.   This question was largely one of fact, and was fairly submitted to the jury, in the general charge as follows: —" If he was not there for a lawful purpose, if he was a trespasser and was not

in some lawful pursuit, or was careless and that contributed in any degree to his death, then the plaintiff, in this case, could not recover."

There was abundant evidence to justify the jury in finding that as an employee of the Union News Company, he was acting under orders of the representative of that company in doing its necessary work, and at the very place and time where the railroad company provided that it was to be done, by delivering the papers at the car door, and that he was not a trespasser, but was there under his right as an employee of the Union News Company.

This action was brought in the name of the father. The defendant's first point being, "Inasmuch as Martha Waltz, the mother of the deceased, is living, and is not a party to this action, the plaintiff cannot recover," which was refused by the court. The defendant's fifth point was as follows : —" The defendant requests the court to instruct the jury that if they find for the plaintiff, to state in their written verdict whether the damages so found are for full compensation for both parents of the deceased." This was answered as follows : —" We instruct you, if you find for the plaintiff to find full compensation and damages, so far as it affects both parents, and you must say in your verdict that you so find. That is, you will find full compensation in damages, whether due the father, or due the mother, or due both the father and the mother." The verdict returned was as follows : —" Sept. 9, 1904. We, the jurors impaneled in the above entitled case, find for the parents, the sum of $1,446.56. Total damages for the death of their son."

The plaintiff filed a formal motion to amend by adding the name of Mary Waltz, the mother of the deceased, as one of the parties entitled to recover. On April 4, 1905, the amendment was allowed, and judgment was then entered on the verdict in favor of the plaintiff.

Whatever of irregularity there was in the pleadings, it was relieved by this amendment. In Huntingdon & Broad Top Mountain Railroad Company v. Decker, 84 Pa. 419, the proper practice to be followed, under the act of 1855, is fully considered, so that there should be no controversy in the profession as to who are the proper parties, and how their demand

should be stated.   See also Kerr v. Pa. R. R. Co., 169 Pa. 95;
Weaver v. Iselin, 161 Pa. 386; Haughey v. Pitts. R. R. Co.,
210 Pa. 367; Hughes v. Williams, 17 Pa. Superior Ct. 229.

The addition of the name of Mary Waltz did not change the
form of the action, and while her name should have been in-
cluded in the statement as a person entitled to participate in
the damages, its omission did not in any way harm the defend-
ant in the light of the verdict returned by the jury.

The negligence of the company in allowing the dismantled
engine to proceed on its way to Altoona, when it could not be
controlled by the engineer, was a proper matter for the con-
sideration of the jury in determining whether that act was
negligent or not.   It would be straining the judgment of com-
mon-sense jurors to hold under the testimony of the engineer
who had it in charge that it was not negligent.   This act of
negligence was in the carrying out of the direct order of the
superintendent of the division, after he was advised, " That
the engine was in no condition to haul the train.   The pack-
ing was blown out of the throttle."

In view of the character of his employment, the boy was not
a trespasser while he was receiving the papers from the baggage
car, and conceding that he was engaged or employed about the
depot within the meaning of the Act of April 4, 1868, P. L. 58,
the plaintiff was entitled to recover by reason of the negligence
of the company in permitting the freight engine to run through
the station while the passenger train was standing at that point.

The case was carefully tried in the court below and after a
fair submission to the jury of all the disputed facts, no sufficient
reason has been shown to warrant our disturbing the verdict
as returned by the jury.

The judgment is affirmed.